IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:11-cv-00122

| | |
|---|---|
| SLEP-TONE ENTERTAINMENT CORPORATION<br>   Plaintiff,<br><br>v.<br><br>ROBERT MAINVILLE, *et al*,<br>   Defendants. | ORDER |

THE MATTER comes now before the Court upon Defendant Collin Yarbrough's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) [D.I. 20, 21], Defendant Nona Powers' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). [D.I. 24], Defendant Steven Penny's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) [D.I. 25], and upon the Court's request, made at the August 25, 2011 hearing on the Motions to Dismiss, that the parties brief the issue of whether joinder of the large group of Defendants is proper.

## I. LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the plaintiff's complaint. *See Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). When deciding a 12(b)(6) motion to dismiss, a court must "accept as true all factual allegations" presented in the complaint. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 589 (2007). In order to survive a 12(b)(6) motion to dismiss the plaintiff's complaint must contain more than mere legal conclusions. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). A complaint must plead facts sufficient to "raise a right to relief above the speculative level" and to demonstrate that the claim is "plausible on its face."

*Twombly*, 550 U.S. 544, 570 (2007). The claim is facially plausible when the factual content of the complaint allows the court to "draw the reasonable inference that the defendant is liable for the misconduct." *Iqbal*, 129 S. Ct. 1937, 1949 (2009). Thus, if a complaint establishes a sufficient legal and factual basis for the claims asserted the motion to dismiss will be denied.

## II. FACTUAL BACKGROUND

Plaintiff Slep-Tone Entertainment Corporation ("Slep-Tone") is a manufacturer and distributor of karaoke accompaniment tracks sold under the name "Sound Choice." (Compl. at 2). Slep-Tone has its principal place of business in Charlotte, North Carolina. (Compl. ¶ 5). Defendant Nona Powers is an individual, engaged in the business of providing karaoke entertainment, who does business as "Cat and Bone Karaoke" and who has her principal business address in Cary, North Carolina. (Compl. ¶ 14). Defendant Collin Yarbrough is an individual, engaged in the business of providing karaoke entertainment, who does business as "DJ Collin Y" and who has his principal business address in Raleigh, North Carolina. (Compl. ¶ 25). Defendant Steven Penny is an individual, engaged in the business of providing karaoke entertainment, who does business as "Southeastern Entertainment" and who has his principal business address in Raleigh, North Carolina. (Compl. ¶ 27).

Slep-Tone is the owner of two trademarks registered with the U.S. Trademark office relating to the name "Sound Choice" and to a specific display of the name.[1] (Compl. ¶¶ 53, 54). Plaintiff has, for the entire time the Marks have been registered, provided the public with notice of its federal registrations through the consistent display of the ® symbol with its Marks. (Compl. ¶ 55).

---

[1] Slep Tone is the owner of U.S. Trademark Registration Nos. 1,923,448 and 2,000,725. (Compl. ¶¶ 53, 54).

Slep-Tone was founded by two brothers 25 years ago and became a leading producer of karaoke backing music. (Compl. at 2). Plaintiff states that it invested more than $18 million to re-record and replicate the authentic sound of popular music across different eras and genres of music. *Id*. A karaoke jockey ("KJ") plays karaoke songs using compact discs written in a special encoded formats known as compact disc plus graphics ("CD+G") or MP3 plus graphics ("MP3G"). *Id*. Karaoke CD+G and MP3G recordings contain music and accompanying lyrics which display on a screen to aid the performer. (Compl. ¶¶ 29-31). Graphics data is also used to mark the accompaniment tracks with Plaintiff's trademarks and to cause the trademarks to be displayed upon playback. (Compl. ¶ 32).

KJs purchase equipment, purchase or license compact discs containing accompaniment tracks, and charge for karaoke services. (Compl. ¶ 35). Plaintiff states that some KJs obtain, copy, share, distribute and/or sell media-shifted copies of the accompaniment tracks via pre-loaded hard drives, USB drives, CD-R's, or the Internet. (Compl. ¶ 36). Slep-Tone does not authorize the digitization of its songs for commercial use in producing karaoke shows, but Slep-Tone claims that it tolerates the shifting of its accompaniment tracks from the original medium to another medium provided that the KJ follows Slep-Tone's media-shifting policy by maintaining "one-to-one correspondence." (Compl. ¶ 37-39).

Plaintiff states that technological advances made possible widespread illegal copying and distribution of its karaoke discs among KJs. (Compl. at 2-3). Furthermore, Plaintiff claims that these practices injure its business and pressure legitimate KJs to turn to piracy to stay in business. (Compl. at 3-4).

Slep-Tone alleges that defendant Nona Powers was observed operating a karaoke system to produce a karaoke show in this State and that, in connection with the show and with

defendant's weekly karaoke shows, defendant Powers repeatedly displayed the Sound Choice Marks without right or license. (Compl. ¶¶ 78-80).

Slep-Tone also alleges that defendant Collin Yarbrough was observed operating a karaoke system to produce a karaoke show in this State where defendant Yarbrough used counterfeit goods bearing the Sound Choice Marks and repeatedly displayed the Sound Choice Marks without right or license. (Compl. ¶¶ 117, 118). Plaintiff alleges that defendant Yarbrough has advertised or otherwise indicated that he possesses a library containing more than 14,000 tracks stored on his karaoke system. (Compl. ¶ 119).

Finally, Slep-Tone alleges that defendant Steven Penny was observed operating a karaoke system to produce a karaoke show at a venue in this State where defendant Penny used counterfeit goods bearing the Sound Choice Marks and repeatedly displayed the Sound Choice marks without right or license. (Compl. ¶¶ 123, 124). Plaintiff further alleges that defendant Penny possesses a library containing more than 12,700 tracks stored on the karaoke system used to produce the aforementioned show and that defendant Penny uses at least four karaoke systems to produce karaoke shows at venues and private events in this State. (Compl. ¶¶ 125, 126).

### III. ANALYSIS

#### A. Motions to Dismiss

Defendants Yarbrough, Powers, and Penny challenge the sufficiency of Plaintiff Slep-Tone's pleading for trademark infringement and unfair competition. Under federal law, a plaintiff alleging a cause of action under the Lanham Act for unfair competition and trademark infringement must set forth: (1) that plaintiff possesses a mark; (2) that defendant used the mark; (3) that defendant's use of the mark occurred "in commerce;" (4) that defendant used the mark "in connection with the sale, offering for sale, distribution, or advertising" or goods or services;

and (5) that the defendant used the mark in a manner likely to confuse consumers. *People for Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 364 (4th Cir. 2001) (citing 15 U.S.C. §§ 114, 1125(a)). Under North Carolina law, a plaintiff alleging a cause of action for unfair competition, in both common and statutory form under N.C. Gen. Stat. § 75-1.1, is subject to an analysis similar to the federal law in the context of trademarks and tradenames. *See Yellowbrix, Inc. v. Yellowbrick Solutions, Inc.*, 181 F. Supp. 2d 575, 583 (E.D.N.C. 2001) (denying preliminary injunction under N.C. Gen. Stat. § 75-1.1 and under North Carolina common law for the same reasons injunction denied under 15 U.S.C. § 1125(a)). *See also Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir. 1987) ("The North Carolina common law of unfair competition in the context of trademarks and tradenames is similar to the federal law of trademark infringement."); *Universal Furniture Int'l v. Collezione Europa USA, Inc.*, 2007 WL 2712926, at *15 (M.D.N.C. Sept. 14, 2007) (equating the federal and state statutory analyses because the state statute "prohibits the same type of activity that the Lanham Act prohibits"). Here, Plaintiff's Complaint, when reviewed in conjunction with investigative reports filed under seal by Plaintiff [D.I. 33], satisfies the *Twombly* and *Iqbal* standards.

Plaintiff's Complaint does plead facts sufficient to "raise a right to relief above the speculative level" and demonstrates that the claim is "plausible on its face." *Twombly*, 550 U.S. 544, 570. The claim is plausible because the factual content of the Complaint allows the court to "draw the reasonable inference that the defendant is liable for the misconduct." *Iqbal*, 129 S. Ct. 1937, 1949 (2009). The Complaint, when reviewed with the investigative reports, establishes a sufficient legal and factual basis to preclude dismissal of the claims asserted against each remaining Defendant.

## B. Joinder

Federal Rule of Civil Procedure 20(a)(2) allows a plaintiff to join multiple defendants in one action if "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." To remedy improperly joined parties, the court should not dismiss the action outright, but "the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21. The court may act upon motion by a party or *sua sponte*. *Id.*

The Supreme Court found that Courts generally should entertain "the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724. Joinder, however, is not a "substantive right" of the plaintiff. *Saval v. BL, Ltd.*, 710 F.2d 1027, 1030 (4th Cir. 1983). Rather, "[j]oinder is usually thought of as a procedural device by which parties with similar substantive claims might jointly enforce them." *Id.*

The "transaction or occurrence" test of Rule 20 is generally analyzed on a "case by case basis." *Id* at 1031; *See Mosley v. General Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974). The test, if satisfied, "permit[s] all reasonably related claims for relief by or against different parties to be tried in a single proceeding." *Saval* at 1031. Rule 20 "should be construed... to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits." *Id*. However, "merely committing the same type of violation in the same way does not link defendants together for purposes of joinder." *LaFace Records, LLC v. Does 1-38*, 2008 WL 544992 at *2 (E.D.N.C. Feb. 27, 2008).

Here, Defendant Yarbrough argues that Plaintiffs failed to show that either Defendants' actions or Defendants' instrumentality are related. [D.I. 36].  The Court agrees.  Plaintiff argues that Defendants' are properly joined because Plaintiff's investigation leads it to believe that Defendants obtained at least some portion of their infringing materials from the same person.  However, Plaintiff failed to divulge, in its Complaint or under seal, any information regarding the alleged common source.  The alleged source is not named in Plaintiff's Complaint and the alleged source is not identified in any of the underlying investigative materials submitted by Plaintiff to the Court.  Furthermore, Plaintiff made no allegation that the Defendants acted in concert in violating the trademarks at issue.  Here, as in *Saval*, where the Court found that Plaintiffs improperly joined a group of Defendants who sold allegedly defective automobiles, "the defects were similar, but there the commonality ended."  710 F.2d at 1032.  Sleptone alleged that Defendants engaged in similar acts but those similar yet separately occurring acts, purportedly committed by different Defendants at different times and places, are the entire extent of the commonality.[2]  Thus, joinder of the Defendants in this action is improper.

Plaintiff urges this Court to adopt the position taken by the Eastern District of Texas in *MyMail, Ltd. v. America Online, Inc.,* 223 F.R.D. 455 (E.D. Tex. 2004).  There, the *MyMail* Court focused its joinder inquiry on a determination of whether there is a "nucleus of operative

---

[2]Also, in *Laface Records, LLC v. Does 1-38*, 2008 WL 544992 (E.D.N.C. Feb. 27, 2008), before choosing to sever the action because defendants' merely used the same ISP and P2P networks to allegedly commit copyright infringement, the Court stated at *3 that "[i]n similar cases, other courts have commonly held that where there is no assertion that multiple defendants have acted in concert, joinder is improper."  *See BMG Music v. Does 1-4*, No. 3:06-cv-01579-MHP, 2006 U.S. Dist. LEXIS 53237, at *5-6 (N.D.Cal. July 31, 2006) (*sua sponte* severing multiple defendants in action where only connection between them was allegation they used same ISP to conduct copyright infringement); *Interscope Records v. Does 1-25*, No. 6:04-cv-197-Orl-22DAB, 2004 U.S. Dist. LEXIS 27782, ay *19 (M.D.Fla. Apr. 1, 2004) (magistrate judge recommended *sua sponte* severance of multiple defendants in action where only connection between them was allegation they used same ISP and P2P network to conduct copyright infringement).

facts or law" common to the defendants. *Id* at 456-457. In support of its request, Plaintiff argues that the Defendants' actions are logically related because they are predicated, without exception, upon the existence of an unbroken chain of infringement originating from a common ultimate source. The Court disagrees with this logic. Obviously, the infringement of any trademark, copyright, or patent originates from a common ultimate source, that being the trademark, copyright, or patent itself. Here, Defendants may have committed the "same type of violation in the same way," but, again, that "does not link defendants together for purposes of joinder." *LaFace*, 2008 WL 54492 at *2. There is no allegation that the twenty-three Defendants sued here acted in concert. Although each Defendant allegedly infringed upon the same trademark, each Defendant allegedly did so separately, in time and place, from the other Defendants with no knowledge that the other Defendants were also engaged in any alleged infringement of their own. Thus, this Court declines to follow *Mymail*, in this instance, and finds that joinder is improper.

Of particular concern to the Court is the lack of any connection between the claims against the various Defendants. It appears that theses cases are really separate lawsuits combined together for no apparent reason except to avoid paying filing fees. Since there appears to be no legitimate basis for joining the Defendants together in these cases, the Court finds that the claims against all but the first-named Defendant, Keith Garner, should be SEVERED from this action upon Plaintiff's filing of new, separate actions against each of the remaining severed Defendants within (20) days and paying the requisite filing fees. In so finding, the Court notes that the potential prejudice to the individual defendants if their cases were to be tried together, given that the proof against each of them is separate and unique, is patently obvious.[3]

---

[3]The Court also notes that the failure to file these cases as separate lawsuits when they are in fact separate lawsuits causes the filing statistics in this district to be inaccurate. Such

### III. CONCLUSION

For the reasons set out herein, the Motions to Dismiss are DENIED. Plaintiff's claims against all Defendants except Keith Garner, are SEVERED from this action. Plaintiff shall file new, separate actions against each of the remaining severed Defendants within thirty (30) days and pay the requisite filing fees. Any such actions should be filed in the venue where the Defendant resides. Failure to comply with the filing requirements of this Order will result in the dismissal, with prejudice, of those claims not pursued against particular Defendants. Plaintiff shall report back to the Court regarding the status of its compliance with the filing requirements set forth herein.

SO ORDERED

Signed: October 5, 2011

Graham C. Mullen
United States District Judge

---

statistical data is extremely important as it determines the resources that are necessarily allotted to this district. Thus, the misfiling of these cases could result in less resource being allocated to the district than it is entitled to which, of course, could have negative consequences.